1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**SOUTHERN DISTRICT OF CALIFORNIA**

8

9
10
11

TROY FAEGIN, an individual on
behalf of himself, and ANA
MARQUEZ, an individual on behalf of
herself,

CASE NO. 14cv00418-WQH-KSC

ORDER

                                    Plaintiffs,

12

          vs.

13
14
15
16

LIVINGSOCIAL, INC., a Delaware
corporation authorized to do business
in the state of California, DEONTEE'
HICKERSON, and individual, DAVID
THORNTON, an individual, and
TIFFANY HARRIS, and individual,

                                    Defendants.

17

HAYES, Judge:

18

          The matter before the Court is the Motion for Order Compelling Arbitration, filed

19

by Defendant LivingSocial.  (ECF No. 10).

20

**I.    Procedural Background**

21

          On February 2, 2014, Plaintiffs Troy Faegin, and Ana Marquez initiated this

22

action by filing a Complaint against Defendants LivingSocial, Inc. ("LivingSocial"),

23

Deontee' Hickerson, and David Thornton.  (ECF No. 1).  On June 17, 2014, Plaintiff

24

filed the First Amended Complaint ("FAC"), adding Defendant Tiffany Harris.  (ECF

25

No. 7).  The FAC asserts the following claims for relief: (1) mark infringement in

26

violation of California Business and Professional Code § 14200 *et seq.*; (2) willful mark

27

infringement in violation of California Business and Professional Code § 14200 *et seq.*;

28

(3) false advertising in violation of 15 U.S.C. § 1051 *et seq.*; (4) mark infringement in

violation of 15 U.S.C. § 1051 *et seq*.; (5) false advertising in violation of California Business and Professional Code § 17500 *et seq*.; (6) fraud in violation of California Penal Code § 484 and California Civil Code §§ 3281, 3288, and 3294; (7) unfair business practices in violation of California Business and Professional Code § 17200 *et seq*. *Id*.

On July 9, 2014, LivingSocial filed the Motion to Compel Arbitration. (ECF No. 10). On August 25, 2014, Plaintiff filed an opposition. (ECF No. 11). On August 29, 2014, LivingSocial filed a reply. (ECF No 14.)

## II.    Factual Background

Plaintiffs Troy Feagin and Ana Marquez allege that they are co-owners of A.T. Your Service Cleaning and Janitorial, a California-licensed residential and commercial cleaning service located in San Diego, California. (ECF No. 7, FAC at 2). Plaintiffs allege that Defendant LivingSocial is a national online marketing company that advertises deals and discounts on behalf of merchants. (ECF No. 7, FAC at 3).

On August 23, 2012, Plaintiff Ana Marquez signed a Merchant Service Agreement ("Agreement"), authorizing LivingSocial to advertise and sell vouchers for Plaintiffs' company, A.T. Your Service Cleaning and Janitorial, in San Diego County. (ECF No. 11-1, Declaration of Ana Marquez ("Marquez Decl.") ¶ 4; Declaration of Derek Smith ("Smith Decl.") ¶ 3; ECF No. 10-2, Exh. A). Section 10(f) of the Agreement provides:

> In the event of any dispute, claim, or disagreement arising from or relating to this Agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such solution within a period of 30 days, then, by notice upon either Party to the other, all disputes, claims, or differences shall be finally settled by a single arbitrator in an arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules.

(ECF No. 10-2, Smith Decl., Exh. A). Section 9 of the Agreement provides "This Agreement shall commence on the effective date and continue for one (1) year. (ECF

No. 10-2, Smith Decl., Exh. A).

Between October 2012 and November 2012, Defendant LivingSocial promoted A.T. Your Service Cleaning and Janitorial on its web site and through social media. (ECF No. 11-1, Marquez Decl. ¶ 5).

In April 2013, Ana Marquez contacted LivingSocial to inquire about advertising A.T. Your Service Cleaning and Janitorial with the company, but was told there was a two to three month wait time in the San Diego Market. (ECF No. 11-1, Marquez Decl. ¶ 7). A few weeks later in May 2013, Ana Marquez received an email from one of her existing customers stating that the customer had purchased a voucher for A.T. Your Service Cleaning and Janitorial through LivingSocial's web site. (ECF No. 11-1, Marquez Decl. ¶ 8). At the time, A.T. Your Service Cleaning and Janitorial was not advertising with LivingSocial. (ECF No. 11-1, Marquez Decl. ¶ 8). Ana Marquez later found out that LivingSocial was advertising another company called At Your Service Housekeeping in the San Diego area. (ECF No. 11-1, Marquez Decl. ¶ 8). Plaintiffs allege that Defendants Deontee' Hickerson, David Thornton, and Tiffany Harrison are business partners and joint owners of At Your Service Housekeeping. (ECF No. 7, FAC at 3).

LivingSocial did not include a telephone number for At Your Service Housekeeping on the vouchers it sold. (ECF No 11-1, Marquez Decl. ¶ 8). As a result, customers who searched for "At Your Service San Diego" found Plaintiffs' web site and telephone number. (ECF No 11-1, Marquez Decl. ¶ 8). Ana Marquez notified LivingSocial of the problem by email in an effort to clear up the confusion customers were experiencing. (ECF No. 11-1, Marquez Decl. ¶ 9).

On May 7, 2013, Plaintiffs decided to cancel plans for future advertising with LivingSocial. (ECF No. 11-1, Marquez Decl. ¶ 11; ECF No. 11-1, Exh. 3). Over the next few months, Plaintiffs continued to receive telephone calls from customers in San Diego who had mistakenly thought they purchased vouchers for A.T. Your Service Cleaning and Janitorial from LivingSocial. (ECF No. 11-1, Marquez Decl. ¶ 12). The

FAC alleges that "AT YOUR SERVICE failed to honor their vouchers" causing confused consumers to "issue and write unwarranted negative reviews of PLAINTIFFS' services on popular review websites such as Yelp, Google+, Facebook, etc...and...PLAINTIFFS have suffered a loss of business, revenue, and reputation." (ECF No. 7, FAC at 6).

## IV.   Contentions of the Parties

LivingSocial contends that the parties agreed by contract to present any disputes related to their business relationship before the American Arbitration Association should good faith consultations fail. LivingSocial further contends that Plaintiffs' mark infringement, false advertisement, and unfair business practices actions 'relate to' the Agreement under any common sense definition of that term as the parties agreed.

Plaintiffs contend that the mark infringement, false advertisement, and unfair business practices claims do not arise from or relate to any provisions of the Agreement. Plaintiffs contend that LivingSocial fails to suggest how the language "arising from or relating to this Agreement or the breach thereof" can be reasonably interpreted to include Plaintiffs' claims – claims that make no factual allegations concerning terms and conditions of the parties' agreement.

## V.   Discussion

### A.   Federal Arbitration Act

The Federal Arbitration Act ("FAA") "was enacted ... in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citation omitted). Section 2 of the FAA states: "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745

1   (quotations omitted).  "In line with these principles, courts must place arbitration

2   agreements on an equal footing with other contracts, and enforce them according to

3   their terms." *Id*. at 1745-46 (citations omitted).

4       "The basic role for courts under the FAA is to determine (1) whether a valid

5   agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

6   dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013)

7   (en banc) (quotation omitted).  "If the response is affirmative on both counts, then the

8   [FAA] requires the court to enforce the arbitration agreement in accordance with its

9   terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

10  2000).  "[T]he party resisting arbitration bears the burden of proving that the claims at

11  issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79,

12  91-92 (2000).

13      In this case, Plaintiffs do not dispute the fact that the Merchant Service

14  Agreement entered into with LivingSocial included a valid arbitration provision.

15  Plaintiffs contend that the scope of the provision, as determined by the phrase "arising

16  from or relating to the Agreement [or] the breach thereof," does not encompass their

17  state and federal claims for mark infringement, false advertisement, and unfair business

18  practices.  (ECF No. 11 at 3).

19      **B.    Whether the Merchant Service Agreement Encompasses Plaintiffs'**
        **Claims**

20

21      A clause requiring arbitration of any dispute "arising from or relating to" an

22  agreement is a broad arbitration clause.  *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647

23  F.3d 914, 922 (9th Cir. 2011) ("when parties intend to include a broad arbitration

24  provision, they provide for arbitration 'arising out of or relating to' the agreement.");

25  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *DW*

26  *Industries, Inc. v Dentsply Intern., Inc.*, 171 Fed.Appx. 92, 93 (9th Cir. 2006).  In this

27  case, the arbitration provision contained in Section 10(f) of the Agreement states, in

28  pertinent part, "any dispute, claim, or disagreement arising from or relating to this
    Agreement or the breach thereof."  (ECF No. 10-2, Smith Decl., Exh. A).  The Court

1   finds the Agreement contains a broad arbitration provision.

2       Where an arbitration clause is interpreted broadly, it reaches "every dispute
3   between the parties having a significant relationship to the contract and all disputes
4   having their origin or genesis in the contract." *Simula, Inc. v. Autoliv. Inc.*, 175 F.3d
5   716, 721 (9th Cir. 1999). The dispute at issue "need only 'touch matters' covered by
6   the contract," in order for the court to resolve all doubts in favor of arbitration. *Id.* at
7   721 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,
8   624 n. 13 (1985). However, "[a] court may order arbitration of a particular dispute only
9   where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite*
10  *Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 297 (2010). The Supreme
11  Court of the United States has stated that the Court has "never held that [the federal
12  policy favoring arbitration] overrides the principle that a court may submit to arbitration
13  'only those disputes...that the parties have agreed to submit.'" *Id.* at 302 (internal
14  citations omitted).

### 1.    Mark Infringement (Plaintiffs' First, Second, and Fourth Causes of Action)

15
16  Plaintiffs contend that the claims for state and federal mark infringement do not
17  arise from or relate to the Agreement because the Agreement is completely silent on
18  LivingSocial's rights and obligations regarding Plaintiffs' mark. (ECF No. 11 at 11).
19  LivingSocial contends that Plaintiffs' claim of trademark infringement depends
20  explicitly on LivingSocial's prior Agreement with Plaintiffs and Plaintiffs' allegation
21  that LivingSocial helped Plaintiffs' mark "become famous and distinguished." (ECF
22  No. 14 at 4). LivingSocial contends that without a purportedly famous mark, there
23  could be no claim for trademark infringement, and the Agreement between Plaintiffs
24  and LivingSocial unquestionably authorized LivingSocial to promote Plaintiffs' product
25  which led to the mark's purported fame. *Id.*

26      Claims "arise from" an agreement or the breach thereof when the claims relate
27  to "the interpretation and performance of the contract itself." *Tracer Research Corp.*
28  *v. National Environmental Services Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994); *see also*

1   *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir.

2   1983) ("when an arbitration clause refers to disputes or controversies 'under' or 'arising

3   out of' the contract, arbitration is restricted to disputes and controversies relating to the

4   interpretation of the contract and matters of performance.) (internal citations omitted);

5   *Capital Group Communs. Inc. v. Xedar Corp.*, 2013 U.S. Dist. LEXIS 109856, at *11-

6   12 (N.D. Cal. Aug. 5, 2014) ("Plaintiffs' claims do not "arise out of" the Consulting

7   Agreement because the alleged misrepresentations...have nothing to do with the parties

8   performance of the Consulting Agreement or its interpretation...").

9       In this case, the Court concludes that resolution of the mark infringement claims

10   does not require interpretation of the Agreement, or interpretation of Plaintiffs' or

11   LivingSocial's performance or conduct under the Agreement.  *See Simula, Inc.*, 175

12   F.3d at 722-24 (finding claims arbitrable when resolution will necessitate interpreting

13   the Agreement to determine its meaning and interpreting the parties performance and

14   conduct under the Agreement).  The Agreement is silent on LivingSocial's rights and

15   obligations regarding Plaintiffs' mark.  The Court finds that the allegation that the

16   parties entered into a business agreement which led to the mark's purported fame does

17   not compel arbitration under the Agreement.  *See Cape Flattery*, 647 F.3d 914 at 922

18   ("We also rejected the defendants' argument that the dispute was arbitrable because it

19   would not have arisen but for the contract."); *Tracer*, 42 F.3d at 1295 (9th Cir. 1994)

20   ("The fact that the tort claim would not have arisen 'but for' the parties licensing

21   agreement is not determinative.").  In this case, Plaintiffs' mark infringement claims

22   constitute independent wrongs and do not require interpretation of the Agreement or

23   evaluation of either parties performance under the Agreement.  *See Cape Flattery*, 647

24   F.3d at 922 ("When a tort claim constitutes an 'independent wrong from any breach'

25   of the contract, it 'does not require interpretation of the contract.'") (citing *Tracer*, 42

26   F.3d at 1295).  The Court finds that Plaintiffs' mark infringement claims do not "arise

27   from" the Agreement.

28       When determining whether a dispute  "relates to" the agreement the Court must

give that term its common, everyday meaning. *Vechery v. Ticket Innovations, Inc.*, 2009 U.S. Dist. LEXIS 41125, at *14 (C.D. Cal. April 27, 2009) ("[T]he Court must give this term its common, everyday meaning, which is very broad."). The dispute at issue "need only 'touch matters' covered by the contract." *Simula*, 175 F.3d at 721 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985)); *Golden*, 2012 WL 4208779 at 5.

In this case, the Agreement states:

(1) Nature of Services: This Agreement relates to the placement of marketing and promotion services by Merchant with LivingSocial. LivingSocial will promote and authorize third parties to promote a Voucher for the Merchant Product with the particular Deal characteristics identified in the Order Form, in accordance with this Agreement...LivingSocial acts as seller of record for the Voucher on behalf of Merchant, but the Merchant is ultimately the provider of the Merchant Product and is obligor with regard to the Voucher.

(2) LivingSocial Responsibilities: (b) Promotion: (i) LivingSocial may offer and promote the Merchant product or service identified in the Order Form (the "Merchant Product") through one or more of the Promotion Channels on the terms and conditions described in the Order Form (the "Deal"), including the price to be paid by the purchaser (the "Paid Value").

(ECF No. 10-2, Smith Decl., Exh. A). Under the Agreement, LivingSocial agreed to promote a voucher for the merchant's product, but the Agreement is silent on LivingSocial's rights and obligations regarding Plaintiffs' mark. The Court concludes that Plaintiffs' mark infringement claims do not touch matters covered by the Agreement, and Plaintiffs' mark infringement claims do not "relate to" the Agreement. The Court finds Plaintiffs' mark infringement claims do not "arise from or relate to" the Agreement, Plaintiffs' mark infringement claims are not referable to arbitration.

**2.      False Advertisement (Plaintiffs' Third and Sixth Causes of Action)**

Plaintiffs contend that the claims for false advertising do not touch matters covered by the parties' Agreement. Plaintiffs assert that the Agreement makes no reference to LivingSocial's right to advertise competing businesses and that LivingSocial concedes that nowhere in the Agreement does LivingSocial agree to refrain from providing advertising services to companies with similar names in San

Diego or any other geographic area. (ECF No. 11 at 11).

LivingSocial contends that Plaintiffs' claim that LivingSocial engaged in false advertising depends on the knowledge LivingSocial gained from implementing the Agreement, and that the implementation and promotion of the Agreement is the factual predicate for the false advertising claim. LivingSocial further contends that Plaintiffs have not alleged that LivingSocial advertised any information that was false. Plaintiffs assert that the false advertising claim can only 'arise from' LivingSocial's prior deal with Plaintiffs, including LivingSocial's implementation of its promotion responsibilities set forth in Section 2(b) of the Agreement. (ECF No. 14 at 5).

Claims "arise from" an agreement or the breach of an agreement when the claims relate to the interpretation and performance of the contract itself. *See Tracer*, 42 F.3d at 1295 ("an arbitration clause that covers disputes 'arising under' an agreement...covered only those disputes 'relating to' the interpretation and performance of the contract itself."); *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 ("when an arbitration clause refers to disputes or controversies 'under' or 'arising out of' the contract, arbitration is restricted to disputes and controversies relating to the interpretation of the contract and matters of performance.) (internal citations omitted).

In this case, Plaintiffs allege that Defendant LivingSocial's use of the name "AT Your Service" in promoting At Your Service Housekeeping misled consumers as to the source of the services. (ECF No. 7 at 10). Plaintiffs allege that Defendants actions have caused confusion as to the source of cleaning services and are likely to continue to cause confusion, mistake, or deceit as to the source of the cleaning services resulting in damage to Plaintiffs' business. (ECF No. 7 at 10). Plaintiffs further contend that Defendant LivingSocial permitted 30 days to pass without providing the services ordered through AT Your Service Housekeeping. (ECF No. 7 at 14). Plaintiffs allege that "DEFENDANTS' false advertising and failure to perform redirected business away from the PLAINTIFFS, and generated negative reviews on websites such as Yelp.

Facebook, and Google+, which further harmed the PLINTIFFS trhough additional loss of business." (ECF No. 7 at 14). The factual allegations that Defendant LivingSocial misled consumers causing confusion and mistake as to the source of the services ordered by the consumers, and failed to provide the services ordered within 30 days are not based upon the relationship between Plaintiffs and LivingSocial, rather the allegations are based upon LivingSocial's relationship with At Your Service Housekeeping and the three named Defendants. Resolving the false advertisement claims will not require interpretation of the Agreement or interpretation of LivingSocial's performance and conduct under the Agreement. *See Simula, Inc.*, 175 F.3d at 722-24 (finding claims arbitrable when resolution will necessitate interpreting the agreement to determine its meaning and interpreting the parties performance and conduct under the agreement). The Agreement does not include any provision in which LivingSocial agrees to refrain from providing advertising services to companies with similar names in San Diego or any other geographic area. The Court concludes that the false advertisement claims do not "arise from or relate to" the Agreement and Plaintiffs' false advertisement claims are not referable to arbitration.

### 3.    Unfair Business Practices (Plaintiffs' Eighth Cause of Action)

Plaintiffs contend that by infringing on their mark and falsely advertising and selling vouchers for At Your Service Housekeeping, LivingSocial engaged in unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq*. (ECF No. 11 at 12).

Plaintiffs' unfair business practices claims are grounded in Plaintiffs' claims of marked infringement and false advertisement. Because the marked infringement claims and the false advertisement claims do not "arise from or relate to" the Agreement, the unfair business practices claims grounded in the marked infringement and false advertisement claims are also held not to "arise from or relate to" the Agreement. The Court finds Plaintiffs' unfair business practices claims are not referable to arbitration.

**C.     Stay**

LivingSocial requests that the matter be stayed or dismissed during the pendency of the arbitration. The Court finds that Plaintiffs' claims are not subject to arbitration. LivingSocial's request to stay the case during arbitration is accordingly denied.

**VI.    Conclusion**

IT IS HEREBY ORDERED that the Motion to Compel Arbitration (ECF No. 7) is DENIED and the request to stay the case during arbitration is DENIED.

DATED:  October 15, 2014

**WILLIAM Q. HAYES**
United States District Judge