1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**SOUTHERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| 9 TROY FAEGIN, an individual on behalf of himself, and ANA MARQUEZ, an individual on behalf of herself, | CASE NO. 14cv00418-WQH-KSC |
| | ORDER |
| Plaintiffs, | |
| vs. | |
| LIVINGSOCIAL, INC., a Delaware corporation authorized to do business in the state of California, DEONTEE' HICKERSON, and individual, DAVID THORNTON, an individual, and TIFFANY HARRIS, and individual, | |
| Defendants. | |

17

HAYES, Judge:

18

The matter before the Court is the Motion to Dismiss First Amended Complaint

19

Against LivingSocial, Inc. filed by Defendant LivingSocial, Inc.  (ECF No. 17).

20

**I.    Background**

21

On February 2, 2014, Plaintiffs Troy Faegin, and Ana Marquez initiated this

22

action by filing the Complaint against Defendants LivingSocial, Inc. ("LivingSocial"),

23

Deontee' Hickerson, and David Thornton.  (ECF No. 1).  On June 17, 2014, Plaintiff

24

filed the First Amended Complaint ("FAC"), which is the operative complaint, adding

25

Tiffany Harris as a defendant.  (ECF No. 7).

26

On July 9, 2014, Defendant LivingSocial filed a Motion to Compel Arbitration.

27

(ECF No. 10).  On October 15, 2014, the Court issued an Order denying Defendant

28

LivingSocial's Motion to Compel Arbitration.  (ECF No. 15).

On October 27, 2014, Defendant LivingSocial filed the Motion to Dismiss First Amended Complaint Against LivingSocial, Inc.  (ECF No. 17).  On November 24, 2014, Plaintiffs filed an opposition.  (ECF No. 18).  On December 1, 2014, Defendant LivingSocial filed a reply.  (ECF No. 20).

## II.   Allegations of the FAC

Plaintiffs Ana Marquez and Troy Feagin are business partners and joint owners of A.T. Your Service Cleaning and Janitorial.  A.T. Your Service Cleaning and Janitorial is a partnership whose main place of business is in San Diego County.  A.T. Your Service Cleaning advertises and does business in San Diego County.  A.T. Your Service Cleaning and Janitorial "is a cleaning service...."  (ECF No. 7 at 5).

Defendant LivingSocial is a "'strategic business marketing partner, creating online promotions,' in other words, a marketplace that partners with vendors to advertise and offer deals and discounts to potential customers." *Id.* at 3.

Defendants Deontee' Hickerson, David Thornton, and Tiffany Harris are business partners and joint owners of At Your Service Housekeeping.   At Your Service Housekeeping is a partnership that is also referred to as "AYS Housekeeping Services," "At Your Service Housekeeping Company," and "At Your Service Housekeeping Services." *Id.* at 4.  According to its website, At Your Service Housekeeping "is a cleaning service, catering to both residences and businesses." *Id.*  At Your Service Housekeeping advertises and operates in San Diego County.

From March 2012 through April 2012, Plaintiffs partnered with Defendant LivingSocial to advertise At Your Service Cleaning and Janitorial in San Diego County.

From May 2012 until July 2012, Defendants Hickerson and Thornton, "by and through At Your Service [Housekeeping], partnered with" Defendant LivingSocial to advertise At Your Services Housekeeping's cleaning services in San Diego County. *Id.* at 5.  "Defendants Hickerson, Harris, and Thornton, by and through At Your Service [Housekeeping], unlawfully doing business in California, failed almost uniformly to

fulfill and honor vouchers purchased on [D]efendant LivingSocial's website." *Id.*
"Defendants Hickerson, Harris, and Thornton's chosen name, 'At Your Service
Housekeeping,' was and is similar to Plaintiffs' business name, and consumers were
foreseeably caused to be confused about the identity of the Plaintiff and At Your
Service [Housekeeping], and continue to be confused." *Id.*

"The vouchers sold by [D]efendant LivingSocial failed to contain a phone
number for At Your Service [Housekeeping], causing customers to search for the phone
numbers online and to confuse and associate Plaintiffs with At Your Service
[Housekeeping]." *Id.* at 6. "The false advertising and fraudulent activity of the
Defendants diverted consumers expecting to be serviced by Plaintiffs away from
Plaintiff, resulting in a loss of business, revenue, and reputation." *Id.* "The conduct of
Defendants Hickerson, Harris, and Thornton, by and through At Your Service
[Housekeeping], and LivingSocial caused confused consumers, disappointed and
irritated that Defendants Hickerson and Thornton, by and through At Your Service
[Housekeeping], failed to honor their vouchers, to issue and write unwarranted negative
reviews of Plaintiffs' services on popular review websites such as Yelp, Google+,
Facebook, etc." *Id.* "Because of the conduct of Defendants and the resulting negative
reviews, Plaintiffs have suffered a loss of business, revenue, and reputation." *Id.*

The FAC asserts the following claims for relief: (1) mark infringement in
violation of California Business and Professional Code § 14200 *et seq*. ("California
mark infringement") (against Defendants LivingSocial, Hickerson, and Thornton); (2)
willful mark infringement in violation of California Business and Professional Code §
14200 *et seq*. ("California willful mark infringement") (against Defendants
LivingSocial, Hickerson, and Thornton); (3) false advertising in violation of 15 U.S.C.
§ 1051 *et seq*. ("Lanham Act false advertising") (against Defendants LivingSocial,
Hickerson, and Thornton); (4) mark infringement in violation of 15 U.S.C. § 1051 *et*
*seq*. ("Lanham Act mark infringement") (against Defendants LivingSocial, Hickerson,
and Thornton); (5) false advertising in violation of California Business and Professional

Code § 17500 *et seq*. ("California false advertising") (against Defendants Hickerson and Thornton); (6) false advertising in violation of California Business and Professional Code § 17500 *et seq*. ("California false advertising") (against Defendants LivingSocial, Hickerson, and Thornton); (7) fraud (against Defendants Hickerson and Thornton); and (8) unfair business practices in violation of California Business and Professional Code § 17200 *et seq*. ("violation of the UCL") (against all Defendants).

## III.   Discussion

Defendant LivingSocial moves to dismiss all claims in the FAC asserted against it. Defendant LivingSocial moves to dismiss Plaintiffs' first, second, sixth, and eighth claims for California mark infringement, California willful mark infringement, California false advertising, and violation of UCL, respectively, on the ground that it is entitled to immunity under the Communications Decency Act ("CDA"), 47 U.S.C. section 230(c)(1). Defendant LivingSocial moves to dismiss Plaintiffs' third and fourth claims for Lanham Act false advertising and Lanham Act mark infringement, respectively, to the extent that they seek any relief other than injunctive relief, on the ground that Defendant LivingSocial is entitled to the Lanham Act's safe harbor provision for online advertisers.  Defendant LivingSocial moves to dismiss Plaintiffs' second claim for California willful mark infringement on the ground that Plaintiffs have failed to sufficiently plead willfulness.  Defendant LivingSocial moves to dismiss Plaintiffs' fourth claim for Lanham Act mark infringement on the ground that the Lanham Act does not recognize "niche or localized geographic fame."  (ECF No. 17-1 at 16).  Defendant LivingSocial moves to dismiss Plaintiffs' eighth claim for violation of the UCL on the ground that Plaintiffs have failed to plead sufficient facts to support it.  Plaintiffs oppose dismissal on all grounds raised by Defendant LivingSocial and request leave to amend should the Court grant Defendant LivingSocial's Motion to Dismiss.

### A.   12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## B.  CDA Immunity (First, Second, Sixth, and Eighth Claims)

Defendant LivingSocial contends that the Communications Decency Act ("CDA") provides broad immunity to providers of interactive computer services from liability for allegedly improper and illegal content created by third parties. Defendant

LivingSocial contends that it is undisputed that LivingSocial did not play any role in helping the co-Defendants adopt and begin using the name At Your Service Housekeeping, the source and basis of Plaintiffs' causes of action.   Defendant LivingSocial contends that Plaintiffs allege that At Your Service Housekeeping is the "chosen name" of Defendants Hickerson, Thornton, and Harris.   Defendant LivingSocial contends that "[b]ut for the co-Defendants' choice of that business name, none of Plaintiffs' claims would exist so, as a matter of law, LivingSocial cannot be liable for merely promoting and running advertisements for the co-Defendants' business." (ECF No. 17-1 at 13).

Plaintiffs contend that LivingSocial does not qualify as an interactive computer service provider.  Plaintiffs contend that "merely operating a web site does not qualify Defendant LivingSocial as an interactive computer service." (ECF No. 18 at 15). Plaintiffs contend that the CDA does not provide immunity in this case because Defendant LivingSocial is an information content provider, even if the Court were to determine that LivingSocial is an interactive computer service.  Plaintiffs contend that Defendant LivingSocial does not passively display content created entirely by third parties, but "creates and develops content on behalf of its merchants." *Id.* at 16.

47 U.S.C. § 230(c) provides:

(c) Protection for "Good Samaritan" blocking and screening of offensive material

(1) Treatment of publisher or speaker

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability

No provider or user of an interactive computer service shall be held liable on account of--

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

1
2
3

> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

4   47 U.S.C. § 230.

5        "Under the statutory scheme, an 'interactive computer service' qualifies for
6   immunity so long as it does not also function as an 'information content provider' for
7   the portion of the statement or publication at issue." *Carafano v. Metrosplash.com,*
8   *Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). "Interactive computer service" is defined as
9   "any information service, system, or access software provider that provides or enables
10  computer access by multiple users to a computer server, including specifically a service
11  or system that provides access to the Internet and such systems operated or services
12  offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). "Information
13  content provider" is defined as "any person or entity that is responsible, in whole or in
14  part, for the creation or development of information provided through the Internet or
15  any other interactive computer service." 47 U.S.C. § 230(f)(3). "[R]eviewing courts
16  have treated § 230(c) immunity as quite robust, adopting a relatively expansive
17  definition of 'interactive computer service' and a relatively restrictive definition of
18  'information content provider.'" *Carafano*, 339 F.3d at 1123.

19
20
21
22

> A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content.

23  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157,
24  1162-63 (9th Cir. 2008). "[Section] 230(c) provides broad immunity for publishing
25  content provided primarily by third parties." *Carafano*, 339 F.3d at 1124. "Under §
26  230(c) ... so long as a third party willingly provides the essential published content, the
27  interactive service provider receives full immunity regardless of the specific editing or
28  selection process." *Id.*

The FAC alleges that, "[a]ccording to its website (www.livingsocial.com), LivingSocial is a 'strategic business marketing partner, creating online promotions,' in other words, a marketplace that partners with vendors to advertise and offer deals and discounts to potential customers." (ECF No. 7 at 3). The FAC alleges that, "[f]rom March 2012 through April 2012, Plaintiffs partnered with defendant LivingSocial to advertise within the County of San Diego.... In or around May 2012 until in or around July 2012, Defendants Hickerson and Thornton, by and through At Your Service [Housekeeping], partnered with defendant LivingSocial to advertise At Your Service's cleaning services within the County of San Diego, and sell vouchers for that cleaning service." *Id.* The FAC alleges that "[t]he vouchers sold by defendant LivingSocial failed to contain a phone number for At Your Service [Housekeeping], causing customers to search for the phone number online and to confuse and associate Plaintiffs with At Your Service." *Id.* at 6. The FAC alleges that "Defendant LivingSocial had partnered to advertise in the County of San Diego with Plaintiffs, and had helped Plaintiffs' mark become famous and distinguished, before it had partnered with Defendants Harris, Hickerson and Thornton, by and through At Your Service [Housekeeping], and knew or should have known that the business names were similar and that its advertisements would cause dilution of the famous mark." *Id.* at 9. The FAC alleges that "Defendants mutually profited off of the infringement through the purchase of vouchers by consumers." *Id.* "Defendant LivingSocial, in connection with the sales of the services of Defendants Harris, Hickerson and Thornton, by and through At Your Service [Housekeeping], permitted 30 days to pass without providing the services ordered." *Id.* at 14.

Based on the allegations of the FAC, the Court cannot conclude that Defendant LivingSocial is entitled to immunity as an "interactive computer service" that is not an "information content provider." 47 U.S.C. § 230(f)(2) & (3). The FAC alleges that Defendant LivingSocial advertises and sells the allegedly misleading vouchers. From this allegation, the Court is able to draw the "reasonable inference" that Defendant

1  LivingSocial was "'responsible, in whole or in part' for creating or developing" the
2  content made available on LivingSocial's website. *Moss v. U.S. Secret Serv.*, 572 F.3d
3  at 969; *Roommates.Com*, 521 F.3d at 1162.  Defendant LivingSocial's motion to
4  dismiss Plaintiffs' first, second, sixth, and eighth claims on the ground that it is entitled
5  to CDA immunity is denied.

6  **C.  Lanham Act's Safe Harbor Provision (Third and Fourth Claims)**

7  Plaintiffs' third and fourth claims are for Lanham Act false advertising and
8  Lanham Act mark infringement, respectively.

9  Defendant LivingSocial contends that section 1114(2)(B) of the Lanham Act
10  requires that Plaintiffs' third and fourth claims be dismissed against Defendant
11  LivingSocial to the extent they seek anything other than injunctive relief.  Defendant
12  contends that Plaintiffs admit that Defendant LivingSocial is an online advertiser that
13  helps companies "advertise and offer deals and discounts to potential customers," and
14  that LivingSocial provided the advertising services for the co-Defendants' company that
15  serve as the basis for all of Plaintiffs' claims.  (ECF No. 17-1 at 14).  Defendant
16  LivingSocial contends that it therefore qualifies for protection under the Lanham Act's
17  safe harbor provision because its advertisements were paid for by a third-party and
18  qualify as "electronic communications."  *Id.*  Defendant LivingSocial contends that
19  Plaintiffs' request for injunctive relief is moot because "LivingSocial stopped running
20  co-Defendants' advertisement in July 2013 and the co-Defendants' website and
21  business is defunct...."  *Id.* at 15.

22  Plaintiffs contend that LivingSocial must qualify as an "innocent infringer" or
23  an "innocent violator" before 15 U.S.C. section 1114(2)(B) will serve to limit Plaintiffs'
24  remedies.  (ECF No. 18 at 18).  Plaintiffs contend that Defendant LivingSocial
25  mischaracterizes its role as a publisher of "primarily third-party content." *Id*.  Plaintiffs
26  contend that the fact that LivingSocial "helps companies advertise and offer deals" does
27  not automatically render its marketing materials and vouchers third-party content.  *Id.*
28  Plaintiffs contend that Defendant LivingSocial does not qualify as an "innocent

infringer" or an "innocent violator" because Defendant LivingSocial was aware of A.T. Your Service Cleaning and Janitorial's existence through the parties own business relationship beginning in early 2012. Plaintiffs contend that the Lanham Act's safe harbor provision does not apply to its fourth claim. Plaintiffs contend that their request is not moot because Defendant LivingSocial may run more advertisements with At Your Service Housekeeping in the future.

15 U.S.C. section 1114(2)(B) provides:

> (2) Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

>> (B) Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of Title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

15 U.S.C. § 1114(2)(B). This safe harbor provision protects "use by persons ignorant of another's superior right to the mark." *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1220 (9th Cir. 2010) (citing 15 U.S.C. §§ 1114, 1115).

The FAC alleges that "Defendant LivingSocial had partnered to advertise in the County of San Diego with Plaintiffs, and had helped Plaintiffs' mark become famous and distinguished, before it had partnered with Defendants Harris, Hickerson and Thornton, by and through At Your Service [Housekeeping], and knew or should have known that the business names were similar and that its advertisements would cause dilution of the famous mark." (ECF No. 7 at 9). The FAC alleges that "[t]he false advertising of the Defendants diverted consumers expecting to be serviced by Plaintiffs away from Plaintiffs, resulting in a loss of business, revenue, and reputation." *Id.*

The allegations of the FAC do not demonstrate that Defendant LivingSocial is entitled to protection under the Lanham Act's safe harbor provision as an "innocent infringer[]" or "innocent violator[]."  15 U.S.C. § 1114(2)(B).  The FAC alleges that Defendant LivingSocial was aware of A.T. Your Service Cleaning and Janitorial's mark from their prior partnership and then advertised with At Your Service Housekeeping in the same market.  Defendant LivingSocial's motion to dismiss Plaintiffs' third and fourth claims for Lanham Act false advertising and Lanham Act mark infringement based on the Lanham Act's safe harbor provision is denied.

**D.  California Willful Mark Infringement (Second Claim)**

Plaintiffs' second claim for California willful mark infringement pleads willfulness in order to pursue damages pursuant to California Business and Professions Code section 14250.  *See* Cal. Bus. & Prof. Code § 14247(b).

Defendant LivingSocial contends that a violation of California Business and Professions Code section 14247(b) requires a willful intent to dilute a famous trademark.  Defendant LivingSocial contends that Plaintiffs have not alleged any facts showing that LivingSocial willfully intended to dilute their trademark.  Defendant LivingSocial contends that Plaintiffs have only alleged that LivingSocial "knew or should have known that the business names were similar and that its advertisements would cause dilution of the famous mark."  (ECF No. 17-1 at 15).  Defendant LivingSocial contends that "[t]his is exactly the kind of 'threadbare recitals' of a cause of action that the Supreme Court has counseled against."  *Id.*

Plaintiffs do not directly address this contention in opposition.  However, in contending that Defendant LivingSocial was not an "innocent infringer," Plaintiffs contend that they have alleged that Defendant LivingSocial knew or should have known that its conduct would deceive consumers, based on Plaintiffs' prior relationship with Defendant LivingSocial.  In reply, Defendant LivingSocial contends that "Plaintiffs do not dispute that Count 2 of their FAC ... contains nothing more than 'an unadorned, the defendant-unlawfully-harmed-me accusation.'" (ECF No. 20 at 11).

14cv00418-WQH-KSC

California Business and Professions Code section 14247(b) provides, in relevant part:

> In an action brought under this section, the owner of a famous mark shall be entitled to injunctive relief throughout the geographic area in which the mark is found to have become famous prior to commencement of the junior use, but not beyond the borders of this state. If the person against whom injunctive relief is sought willfully intended to cause dilution of the famous mark, the owner shall also be entitled to the remedies set forth in Section 14250, subject to the discretion of the court and the principles of equity....

Cal. Bus. & Prof. Code § 14247(b). California Business and Professions Code section 14250 provides for damages. *See* Cal. Bus. & Prof. Code § 14250(c).

The FAC alleges that "Defendant LivingSocial had partnered to advertise in the County of San Diego with Plaintiffs, and had helped Plaintiffs' mark become famous and distinguished, before it had partnered with Defendants Harris, Hickerson and Thornton, by and through At Your Service [Housekeeping], and knew or should have known that the business names were similar and that its advertisements would cause dilution of the famous mark." (ECF No. 7 at 9). The FAC alleges that "[t]he false advertising of the Defendants diverted consumers expecting to be serviced by Plaintiffs away from Plaintiffs, resulting in a loss of business, revenue, and reputation." *Id.* The Court finds these allegations sufficient to draw the reasonable inference that Defendant LivingSocial willfully infringed Plaintiffs' trademark. *See* Fed. R. of Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Defendant LivingSocial's motion to dismiss Plaintiffs' second claim is denied.

### E. Lanham Act Mark Infringement (Fourth Claim)

Plaintiffs' fourth claim seeks injunctive relief for mark infringement pursuant to the Lanham Act, 15 U.S.C. section 1125(c).

Defendant LivingSocial contends that Plaintiffs' fourth claim fails because the Lanham Act does not recognize niche geographic fame. Defendant LivingSocial contends that the FAC alleges that Plaintiffs' trademark is famous in Southern California and San Diego County. Defendant LivingSocial contends that Plaintiffs have

1   not alleged that their trademark is widely recognized by consumers throughout the

2   United States.

3        Plaintiffs contend that Defendant "LivingSocial's request is premature in that it

4   asks this Court to summarily dismiss Plaintiff's claim, based purely on LivingSocial's

5   belief that Plaintiffs cannot allege wide recognition of their mark." (ECF No. 18 at 13).

6   Plaintiffs contend that the FAC alleges that Plaintiffs have advertised A.T. Your Service

7   on numerous websites, including Defendant LivingSocial, and that it has been

8   recognized on consumer review websites such as Yelp, Google +, and Facebook.

9   Plaintiffs contend that the FAC alleges that the advertising partnership with

10  LivingSocial helped make A.T. Your Service's mark famous and distinguished.

11  Plaintiffs further contend that whether Plaintiff can ultimately present sufficient

12  evidence of public recognition is not a determination to be made at this stage.

13       15 U.S.C. section 1125(c) provides:

14  (c) Dilution by blurring; dilution by tarnishment

15  (1) Injunctive relief

16  Subject to the principles of equity, the owner of a famous mark that is
    distinctive, inherently or through acquired distinctiveness, shall be entitled
17  to an injunction against another person who, at any time after the owner's
    mark has become famous, commences use of a mark or trade name in
18  commerce that is likely to cause dilution by blurring or dilution by
    tarnishment of the famous mark, regardless of the presence or absence of
19  actual or likely confusion, of competition, or of actual economic injury.

20  (2) Definitions

21  (A) For purposes of paragraph (1), a mark is famous if it is widely
    recognized by the general consuming public of the United States as a
22  designation of source of the goods or services of the mark's owner. In
    determining whether a mark possesses the requisite degree of recognition,
23  the court may consider all relevant factors, including the following:

24          (i) The duration, extent, and geographic reach of advertising
            and publicity of the mark, whether advertised or publicized
25          by the owner or third parties.

26          (ii) The amount, volume, and geographic extent of sales of
            goods or services offered under the mark.
27
            (iii) The extent of actual recognition of the mark.
28
            (iv) Whether the mark was registered under the Act of March

3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c). "In order to prove a violation of the Federal Trademark Dilution Act, a plaintiff must show that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998) (citing 15 U.S.C. § 1125(c)). "[T]o meet the 'famousness' element of protection under the dilution statutes, 'a mark must be truly prominent and renowned.'" *Avery Dennison Corp. v. Sumpton*, 189 F.3d 969, 875 (9th Cir. 1999). "[F]or purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way ... the mark must be a household name." *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002). For example, fame "among bicycle enthusiasts" is not "fame among the general consuming public." *Id.*

The FAC alleges that A.T. Your Service Cleaning and Janitorial does business and advertises in San Diego County, and that Defendants' false advertising caused customers' confusion and A.T. Your Service Cleaning and Janitorial's loss of business. The FAC fails to allege facts plausibly demonstrating that A.T. Your Service Cleaning and Janitorial is "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A). Defendant LivingSocial's motion to dismiss Plaintiffs' fourth claim for Lanham Act mark infringement is granted.

## F. UCL (Eighth Claim)

Plaintiffs' eighth claim for violation of the UCL is based on Defendants alleged false advertising, fraud, mark infringement, and violations of the California Labor Code and Industrial Welfare Commission Wage Order.

Defendant LivingSocial contends that Plaintiffs fail to plead facts demonstrating that LivingSocial's advertisements were false. Defendant LivingSocial contends that

Plaintiffs "utterly failed" to plead fraud with particularity. (ECF No. 17-1 at 17). Defendant LivingSocial contends that Plaintiffs also allege violations of the California Labor Code and Industrial Welfare Commission Wage Order, but fail to cite a specific statutory section or provide explanations or factual support for the claim. Defendant LivingSocial contends that it is not able to consider or respond to such vague allegations.

Plaintiffs contend that the Federal Rules of Civil Procedure do not require Plaintiffs to cite each specific statute supporting a cause of action. Plaintiffs contend that they have "undoubtedly" pled facts sufficient to state a claim for relief under the UCL by alleging facts demonstrating that Defendant LivingSocial's advertising caused confusion among consumers. (ECF No. 18 at 22).

Under the UCL, any person or entity that has engaged "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Id. § 17200. The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 973 P.2d 527, 539 (1999) (internal quotations and citation omitted). The UCL "unlawful" prong essentially "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Id. at 539–40 (internal quotations and citation omitted). To state a claim under the "fraudulent" prong of the UCL, "it is necessary only to show that members of the public are likely to be deceived" by the business practice. In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009). California Courts of Appeal have formulated three tests for determining "unfair" business practices, and the Ninth Circuit has approved of two of them. See Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736-37 (9th Cir. 2007). Under one test for "unfair," "the unfairness [must] be tied to a 'legislatively declared' policy...." Id. at 736. The other test for

1  "unfair" "involves balancing the harm to the consumer against the utility of the
2  defendant's practice." *Id.* at 735.

3      In addition, section 17200 defines "unfair competition" to include "any act
4  prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of
5  the Business and Professions Code." Cal. Bus. & Prof. Code § 17200.

6      In this case, Plaintiffs' sixth claim is asserted against Defendant LivingSocial for
7  violation of California Business & Professions Code section 17500 and has not been
8  dismissed. This alleged violation falls within the scope of California Business &
9  Professions Code section 17200. Defendant LivingSocial's motion to dismiss
10  Plaintiffs' eighth claim for violation of the UCL is denied.

11  **VI.   Conclusion**

12      IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 17) is
13  GRANTED in part and DENIED in part. Plaintiffs' fourth claim for Lanham Act mark
14  infringement is dismissed without prejudice. The Motion to Dismiss is denied in all
15  other respects.

16  DATED: March 16, 2015

17   

18  **WILLIAM Q. HAYES**
       United States District Judge

19
20
21
22
23
24
25
26
27
28